**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LHISSIDEY HARRISON** | ) | |
| *Plaintiff* | ) | |
| **vs.** | ) | |
| | ) | |
| **AMAZON.COM SERVICES, INC.** | ) | **Case No: 20-2245** |
| *Serve Registered Agent*: | ) | |
| Corporation Service Company | ) | |
| 2900 SW Wanamaker Drive, Ste 204 | ) | |
| Topeka, KS 66614 | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **AMAZON.COM SERVICES, LLC** | ) | |
| *Serve Registered Agent:* | ) | |
| Corporation Service Company | ) | |
| 2900 SW Wanamaker Drive, Ste 204 | ) | |
| Topeka, KS 66614 | ) | |
| *Defendants* | ) | |

## COMPLAINT

COMES NOW Plaintiff Lhissidey Harrison ("Plaintiff"), by and through her attorneys, to allege the following against Amazon.com Services, Inc. ("Amazon Inc") and Amazon.com Services, LLC ("Amazon LLC"), collectively referred to herein as "Defendant."

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all triable issues alleged herein.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

## NATURE OF THE CLAIM

1.      In May 2019, Defendant hired Plaintiff for employment at its Shawnee, KS facility.

2.      On June 21, 2019, Plaintiff sustained traumatic burn injuries to her face and hands causing a cosmetic disfigurement and requiring hospitalization and surgical intervention.

3.     Plaintiff and others immediately informed Defendant of the injuries to Plaintiff's face and hands, her hospitalization, and need for reasonable accommodation in the form of temporary medical leave.

4.     Defendant assured Plaintiff that her job was "secure" and then terminated her employment on June 28, 2019, calling it a "voluntary termination."

5.     In the following months, Plaintiff registered multiple complaints with Defendant of disability discrimination and retaliation while requesting that her employment be reinstated or that she be rehired.

6.     From August 1, 2019 to January 2020, Defendant refused to return Plaintiff to her employment with Defendant.

7.     In violation of The Americans with Disabilities Act, 42 USC §§ 12101 – 12213 ("ADA"), Defendant discriminated and retaliated against Plaintiff based on her disability, requests for accommodations, and opposition to discrimination.

8.     Defendant interfered with Plaintiff's federally protected rights under the ADA.

9.     Plaintiff seeks legal and equitable relief available under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq*.

## **PARTIES**

10.     **PLAINTIFF** is a female citizen of the USA domiciled in Missouri.

11.     From May 2019 until June 28, 2019, Plaintiff was employed by Defendant.

12.     As defined by 42 USC § 12111(4), Plaintiff was Defendant's "employee."

13.     Prior to her discharge, Plaintiff had a "disability" as that term is defined by 42 USC § 12102(1) and CFR § 1630.2(g)-(i), in that she suffered from a physical condition (traumatic burns to her face and hands, and cosmetic disfigurement) that substantially limited one or more

major life activity, including, without limitation, caring for herself, performing manual tasks, communicating or interacting with others, and working.

14.     Prior to her discharge, Plaintiff had a "disability" as that term is defined by 42 USC § 12102(1), in that she had a record of having the impairment described in the preceding paragraph.

15.     Prior to her discharge, Plaintiff had a "disability" as that term is defined by 42 USC § 12102(1), in that Defendant subjected Plaintiff to adverse employment actions because of her actual or perceived impairments described above.

16.     **DEFENDANT AMAZON INC** is a citizen of Delaware (its state of incorporation) and Washington (the state in which its principal place of business is located).

17.     Amazon Inc paid Plaintiff wages in 2019 and issued her a 2019 W2.

18.     Amazon Inc employed Plaintiff at its Shawnee, Kansas facility.

19.     During Plaintiff's employment, Amazon Inc was an "employer" as that term is defined by 42 USC § 12111(5) in that it was engaged in an industry affecting commerce and had 15 or more employees.

20.     Before, during, and after Plaintiff's employment with Amazon Inc, Amazon Inc employed 15 or more employees.

21.     Before, during, and after Plaintiff's employment with Amazon Inc, Amazon Inc employed more than 500 employees.

22.     Amazon Inc is an artificial entity incapable of acting alone and therefore acts through agents. It is liable for the conduct of its agents acting within the course and scope of their agency, its own negligence, the acts of its agents which it ratifies, injuries incurred by agents' performance of its non-delegable duties, and acts its agents take which are aided by their agency with Amazon Inc.

23.     Amazon Inc is liable the acts of its agents which is knowingly ratifies.

24.     On January 22, 2020, Amazon Inc filed a Foreign Corporation Certificate of Withdrawal with the Kansas Secretary of State's office and Amazon LLC filed its Application for Registration.

25.     Amazon Inc and Amazon LLC have the same principal place of business and mailing address: 410 Terry Avenue North, Seattle, WA 98109.

26.     In response to a charge of discrimination Plaintiff filed against Defendant with the US Equal Employment Opportunity Commission ("EEOC"), Amazon LLC wrote the EEOC saying, "The appropriate Respondent in this matter is Amazon.com Services, LLC, which is the operating entity for DMC1 in Shawnee, Kansas.

27.     Further discovery will likely show that in January 2020 Amazon LLC assumed all of Amazon Inc's assets and liabilities, and Amazon Inc simply changed its incorporation status to a limited liability company.

28.     **DEFENDANT AMAZON LLC** is a citizen of Delaware (its state of incorporation) and Washington (the state in which its principal place of business is located).

29.     After Plaintiff initiated her legal claims with the EEOC against Amazon Inc, Amazon LLC reinstated Plaintiff's employment at its Shawnee, Kansas facility in January 2020.

30.     Amazon LLC pays Plaintiff wages.

31.     During Plaintiff's employment, Amazon LLC was an "employer" as that term is defined by 42 USC § 12111(5) in that it was engaged in an industry affecting commerce and had 15 or more employees.

32.     Before, during, and after Plaintiff's employment with Amazon LLC, Amazon LLC employed 15 or more employees.

33.     Before, during, and after Plaintiff's employment with Amazon LLC, Amazon LLC employed more than 500 employees.

34.     Amazon LLC is an artificial entity incapable of acting alone and therefore acts through agents. It is liable for the conduct of its agents acting within the course and scope of their agency, its own negligence, the acts of its agents which it ratifies, injuries incurred by agents' performance of its non-delegable duties, and acts its agents take which are aided by their agency with Amazon Inc.

35.     Amazon LLC is liable the acts of its agents which is knowingly ratifies.

## SUBJECT MATTER JURISDICTION

36.     This Court has original subject matter jurisdiction over this case pursuant to 28 USC § 1331 because Plaintiff makes claims under the Americans with Disabilities Act, 42 USC §§12101 – 12213 ("ADA").

## PERSONAL JURISDICTION

37.     Plaintiff submits to the jurisdiction of this Court for this lawsuit.

38.     Defendant is subject to personal jurisdiction in this Court for the specific purposes of this lawsuit because the acts and omissions alleged herein took place in Kansas, and because there is a nexus between the injuries alleged herein and Defendant's ongoing business in Kansas.

## VENUE

39.     Venue is proper in this District pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PROCEDURES

40.     Between June 21, 2019 and June 28, 2019, Defendant failed to provide Plaintiff reasonable accommodations.

41.     On June 28, 2019, Defendant terminated Plaintiff's employment.

42.     From June 28, 2019 to January 2020, Defendant refused to reinstate Plaintiff's employment, rehire Plaintiff, or employee Plaintiff.

43.     On September 5, 2019, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant naming it "Amazon." The EEOC assigned the Charge number **563-2019-03029** and file-stamped the Charge on September 5, 2019 acknowledging its receipt of the same. A copy of the Charge is attached hereto as **Exhibit A** and is hereby incorporated by reference.

44.     On September 5, 2019,  Plaintiff filed a Charge of Discrimination with the EEOC against Defendant naming it "Amazon.com Services, Inc."  The EEOC assigned the Charge number **563-2019-03031** and file-stamped the Charge on September 5, 2019 acknowledging its receipt of the same. A copy of the Charge is attached hereto as **Exhibit B** and is hereby incorporated by reference.

45.     On September 11, 2019, the EEOC sent Defendant notice of Charge Nos. **563-2019-03029** and **563-2019-03031.**

46.     In September 2019, Defendant received notice of the Charge Nos. **563-2019-03029** and **563-2019-03031.**

47.     On January 17, 2020, Defendant responded to Charge Nos. **563-2019-03029** and **563-2019-03031** by providing the EEOC with documents and factual allegations including, without limitation, the false claim that Defendant terminated Plaintiff's employment for "job abandonment."

48.     On February 18, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff concerning Charge No. **563-2019-03029** authorizing her to file this lawsuit within 90 days. A copy of the Notice is attached hereto as **Exhibit C** and is hereby incorporated by reference.

49.     On February 18, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff concerning Charge No. **563-2019-03031** authorizing her to file this lawsuit within 90 days. A copy of the Notice is attached hereto as **Exhibit D** and is hereby incorporated by reference.

50.     Ninety days from February 18, 2020, is May 18, 2020.

51.     This lawsuit was filed before May 18, 2020, or within 90 days of February 18, 2020.

52.     Plaintiff exhausted all administrative remedies before timely filing this lawsuit.

## FACTUAL ALLEGATIONS

53.     In May 2019, Defendant hired Plaintiff to work in Shawnee, Kansas.

54.     On June 21, 2019, Plaintiff was shot in the face with a flare gun.

55.     Plaintiff sustained traumatic burns to her face and hands resulting in a cosmetic disfigurement to Plaintiff's face and damage to her hands.

56.     On June 21, 2019, Plaintiff was hospitalized and underwent surgeries.

57.     Plaintiff could not care for herself, work, hold objects, perform manual tasks, bend her fingers completely, and her ability to talk was substantially impaired.

58.     Currently, Plaintiff has a cosmetic disfigurement substantially impairing Plaintiff's communications and interactions with others.

59.     On June 21, 2019, Plaintiff's mother and fiancé notified Defendant of Plaintiff's injuries, hospitalization and inability to work.

60.     On June 22, 2019, Plaintiff was not scheduled to work further discovery will likely show.

61.     On June 22, 2019, Plaintiff's mother and fiancé contacted Defendant at various times, notified Defendant of Plaintiff's injuries, hospitalization, temporary inability work, and requested a temporary medical leave of absence.

62.     Defendant stated that Plaintiff's job was "secure."

63.     Again, on June 23, 2019, Plaintiff and her mother contacted Defendant and discussed Plaintiff's injuries, including the extensive burns to her face and hands, Plaintiff's hospitalization and surgeries, Plaintiff's inability to work, and Plaintiff's need for a temporary medical leave of absence.

64.     Between June 21 and June 28, 2019, Defendant did not inform Plaintiff that she needed to report her injuries or need for a temporary medical leave in any particular way.

65.      Between June 21 and June 28, 2019, Defendant did not inform Plaintiff that she, her mother, or her fiancé had not reported her injuries or need for temporary medical leave properly.

66.     On June 28, 2019, Defendant terminated Plaintiff's employment.

67.     Defendant documented Plaintiff as a "voluntary termination."

68.     June 30, 2019, Plaintiff was discharged from the hospital and received notice that Defendant had terminated her employment representing it as a "voluntary resignation."

69.     Plaintiff contacted her immediate supervisory, Area Manager Timmy Smith.

70.     Defendant's Area Manager, Timmy Smith ("Smith"), told Plaintiff that he terminated her employment but did not categorize the termination as "job abandonment" which would normally be the case.

71.      Smith told Plaintiff that he did not document Plaintiff's termination as "job abandonment" because he "knew what her situation was."

72.     Smith told Plaintiff that he "treated" her termination as a "voluntary term."

73.     On about July 31, 2019, Plaintiff was released to resume employment.

74.     On July 31, 2019, Plaintiff notified Defendant that she was released to work and asked if Smith would contact her.

75.     Plaintiff received no response.

76.     On August 6, 2019, Plaintiff again contacted Defendant to return to work.

77.     On August 7, 2019, Plaintiff contacted Defendant again and asked to be returned to work.

78.     Defendant told Plaintiff she would have to go through the "onboarding process" again.

79.     Plaintiff opposed disability discrimination by asking Smith whether it was illegal to fire someone while that person was in the hospital.

80.     Smith acknowledged that he had received pictures of the burns to Plaintiff's face and Plaintiff's medical documentation.

81.     Smith acknowledged that on or about June 22, 2019, he had spoken with Plaintiff's mother about Plaintiff injuries, hospitalization, inability to talk, and need for temporary work leave.

82.     Smith told Plaintiff that he would support her in returning to work if one of Defendant's other departments contacted him because he knew that Plaintiff was not at work while in the hospital because she had "let him know."

83.     On August 7, 2019, Plaintiff made a complaint of disability discrimination and retaliation with Defendant and made a request for reinstatement or rehire.

84.     On August 7, 2019, Plaintiff provided Defendant her current telephone number and email address.

85.     On August 7, 2019, Defendant told Plaintiff that it had created a report or "ticket" regarding her concerns and request and that its "team" would get back to Plaintiff within 24-48 hours.

86.     By August 13, 2019, Defendant had not gotten back to Plaintiff.

87.     On August 13, 2019, Plaintiff contacted Defendant again, provided her name, date of birth, employee login password, her current email address, her current telephone number, and informed Defendant that her application for employment was submitted and inquired about her rehire/reinstatement date.

88.     On August 13, 2019, Defendant told Plaintiff that it did not have a start date for Plaintiff, that Plaintiff was eligible for rehire, and Defendant would get back to her as soon as her application was approved.

89.     By August 19, 2019, Defendant had not contacted Plaintiff to follow up on her reinstatement or rehire request.

90.     On August 19, 2019, Plaintiff contacted Defendant to inquire again about returning to work, she provided her current telephone number, and asked that Smith call her.

91.     On August 19, 2019, Defendant told Plaintiff it had not reinstated her because of "what had happened."

92.     On August 19, 2019, Defendant provided Plaintiff the email address dmcl-hr@amazon.com and told Plaintiff that she should use that email address to address her concerns.

93.     On August 23, 2019, Plaintiff emailed dmcl-hr@amazon.com, reiterated her complaints of disability discrimination and retaliation, reiterated her on-going attempts to return to work, and requested help.

94.     On August 23, 2019, Plaintiff received an automated response saying her message was not delivered because the address could not be found or was unable to receive mail.

95.     On August 23, 2019, Plaintiff sent her email to dmcl-hr@amazon.com by text message to Defendant and including the automated bounce-back message showing that email address was not working.

96.     On August 23, 2019, Plaintiff reiterated her complaints of discrimination and retaliation with Defendant via text message, told Defendant she felt she was being lied and was getting "the run around."

97.     Plaintiff received no response.

98.     From July 31, 2019 to the end of 2019, Plaintiff received no communications from Defendant despite having provided Defendant with her updated, current contact information on several occasions.

99.     From July 31, 2019 to January 2020, Defendant did not return Plaintiff to work despite Plaintiff's continuous efforts to return to work.

100.    On September 5, 2019, Plaintiff initiated her legal claims against Defendant by filing a charge of discrimination against Defendant with the EEOC.

101.    After Defendant received Plaintiff's charge of discrimination, Defendant reinstated Plaintiff's employment on or about January 28, 2020.

102.    Approximately a month later, Defendant notified Plaintiff that her employment with Defendant would be terminated soon due to restructuring.

103.    In March 2020, Plaintiff requested a medical leave of absence from Defendant for further surgery to her face.

104.    Defendant told Plaintiff her request for leave was granted and that she could have a medical leave of absence until April 15, 2020.

105.    While Plaintiff was on medical leave Defendant "off-boarded" Plaintiff or otherwise terminated her employment.

106.    When Plaintiff returned to work after her leave of absence, she was not allowed to work for days and was told to turn around and go back home.

107.    After making complaints and requests that she be allowed to resume her normal work schedule, Defendant allowed her to return.

108.    Currently, Plaintiff is employed by Defendant awaiting the termination of her employment that Defendant foreshadowed in February 2020.

109.    At all times mentioned herein, before and after, the above described perpetrators were agents, servant and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, or their actions were expressly authorized or ratified by Defendant. Therefore, Defendant is liable for the actions of said persons and/or other perpetrators under all theories pled herein.

### COUNT I
### THE AMERICANS WITH DISABILITIES ACT
### Disability Discrimination

110.    Plaintiff incorporates by reference every other allegation made in this Complaint.

111.    Defendant was an employer for purposes of the ADA.

112.    Plaintiff was an employee of Defendant for purposes of the ADA.

113.    Plaintiff was disabled for purposes of the ADA.

114.    Plaintiff had a record of being disabled for purposes of the ADA.

115.    Defendant regarded Plaintiff as being disabled for purposes of the ADA.

116.    Defendant terminated Plaintiff's employment on June 28, 2019 because Plaintiff was disabled, had a record of being disabled, or because it regarded her as disabled.

117.    Defendant failed to provide Plaintiff with the reasonable accommodation of a temporary medical leave of absence despite knowing her injuries, hospitalization and medical treatment, disabling condition and cosmetic disfigurement.

118.    From August 1, 2019 to January 2020, Defendant chose not to reinstate or rehire Plaintiff despite Plaintiff's efforts to return because Plaintiff was disabled, had a record of being disabled, or because it regarded her as disabled.

119.    The adverse employment actions alleged above directly and proximately caused Plaintiff to suffer damages, including emotional distress, humiliation, intimidation, embarrassment and frustration.

120.    Defendant's discrimination against Plaintiff was done with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

121.    The persons who terminated Plaintiff's employment and refused to allow her to return to work in 2019 were agents of Defendant who were acting in the course and scope of their agency with Defendant or acted with express authority from Defendant.

122.    Defendant, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination in violation of 42 U.S.C. § 12101 *et seq*.; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' and experts' fees provided by 42 U.S.C. § 2000e-5; and for such other relief the Court deems just and proper.

## COUNT II
## THE AMERICANS WITH DISABILITIES ACT
### Retaliation

123.     Plaintiff incorporates by reference every other allegation made in this Complaint.

124.     Plaintiff engaged in protected activity by requesting workplace accommodations to accommodate her disability.

125.     Plaintiff also engaged in protected activity by opposing what she reasonably believed was unlawful discrimination and by registering complaints of discrimination and retaliation with Defendant.

126.     Defendant retaliated against Plaintiff by failing to provide Plaintiff with reasonable accommodations in the form of temporary medical leave, terminating her employment, lying about the reason for her termination, disregarding Plaintiff's attempts to return to her employment with Defendant, and refusing to allow Plaintiff to resume her employment with Defendant for approximately six months.

127.     Defendant terminated Plaintiff's employment, lied about the reason for her termination, disregarded Plaintiff's multiple attempts to resume her employment with Defendant, and refused to return Plaintiff to work from approximately August 1, 2019 to January 2020, because of Plaintiff's protected activity.

128.     The materially adverse acts alleged above directly and proximately caused Plaintiff to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, intimidation, embarrassment, and frustration.

129.     Defendant's retaliation against Plaintiff was done with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. 2000e *et seq*.; for compensatory and punitive damages; costs expended; reasonable attorneys' and experts' fees provided by 42 U.S.C. 2000e-5; and for such other and further relief the Court deems just and proper.

## COUNT III
## THE AMERICANS WITH DISABILITIES ACT
### Interference

130.     Plaintiff incorporate by reference every other allegation made in this Complaint.

131.     Plaintiff engaged in an activity protected by the ADA by informing Defendant of the traumatic burns to her face and hands, her hospitalization and surgeries, and by providing Defendant with pictures and medical documentation concerning her disabling injuries and cosmetic disfigurement, and by requesting accommodations in the form of temporary medical leave.

132.     Plaintiff was engaged in the exercise of her ADA protected rights when informing Defendant of the above.

133.    Defendant coerced, threatened, intimidated, or interfered with Plaintiff's exercise and enjoyment of her ADA protected rights by terminating her employment and refusing to allow her to return to her employment with Defendant in 2019 after her hospitalization.

134.    Defendant was aware of Plaintiff's injuries, the burns to her face and hands, her hospitalization and medical treatment.

135.    Defendant was aware of Plaintiff's temporary inability to return to work.

136.    Defendant terminated Plaintiff's employment and did not allow her to resume her employment with Defendant because Plaintiff exercised her ADA protected rights.

137.    Defendant's coercion, threats, intimidation or interference with Plaintiff's exercise and enjoyment of his ADA rights was motivated by an intent to discriminate against Plaintiff.

138.     Defendant's acts alleged above directly and proximately caused Plaintiff to suffer damages, including emotional distress, humiliation, intimidation, embarrassment and frustration.

139.    Defendant's acts alleged above were done with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. 2000e *et seq*.; for compensatory and punitive damages; costs expended; reasonable attorneys' and experts' fees provided by 42 U.S.C. 2000e-5; and for such other and further relief the Court deems just and proper.

Respectfully Submitted,

**RALSTON KINNEY, LLC**

By:     /s/ *Thomas F. Ralston*
          Thomas F. Ralston, D.Kan. #78212
          Kenneth D. Kinney, D.Kan. #78544
          4717 Grand Avenue, Suite 230
          Kansas City, Missouri 64112
          Telephone: (816) 298.0086
          Facsimile: (816) 298-9455
          Email: tom@rklawllc.com
          Email: ken@rklawllc.com

          **ATTORNEYS FOR PLAINTIFF**